UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL JOSEPH CURNOW,<br><br>            Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No.: 11-cv-02589-PSG<br><br>**ORDER DENYING DEFENDANT MICHAEL J. ASTRUE'S MOTION TO STRIKE AND DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 9, 10)** |

Plaintiff Michael Joseph Curnow ("Curnow") filed this action on May 31, 2011, appealing the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying disability insurance benefits.[1] Curnow moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The Commissioner also moves to strike Curnow's submitted sur-reply. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsel, the court

---

[1] The challenged decision was rendered by Administrative Law Judge Teresa L. Hoskins Hart (the "ALJ") on February 1, 2010. The ALJ's decision became final on March 24, 2011, when the Appeals Council of the Social Security Administration denied Jorgensen's request for administrative review of the decision.

1

Case No.: 11-02589 PSG
ORDER

DENIES the Commissioner's motion to strike and DENIES the cross-motions for summary judgment. The matter is remanded for further proceedings.

## I. BACKGROUND

The following facts are taken from the February 1, 2010 decision by the ALJ and the accompanying administrative record ("AR"). Curnow was born on October 2, 1961[2] and obtained his GED around 1980.[3] He worked as a property inspector from 1992 to 2002, as a truck driver for a freight company from 2002 to 2006, and as a pilot car escort from 2006 to 2008.[4] He has suffered from fibromyalgia from at least 2003 and has struggled with anxiety and depression for several years.[5]

### A.     Medical Evidence

On February 2, 2008, Curnow was involved in a motor vehicle accident[6] and met with his primary physician, Dr. Jon Dykstra ("Dykstra"), two days later.[7] Curnow told Dykstra that his car had hit ice on the road, the car had rolled, and he had hit the side window with enough force to knock it out of its track.[8] Dykstra diagnosed Curnow with post-concussion syndrome, and after repeated complaints from Curnow that he suffered headaches and personality shifts,[9] Dykstra referred him in May 2008 to neurocognitive therapy.[10] Curnow also underwent at least two CT

---

[2] AR at 118.

[3] *Id.* at 140.

[4] *Id.* at 136.

[5] *Id.* at 17.

[6] *Id.* at 261.

[7] *Id.* at 214.

[8] *Id.* at 214.

[9] *Id.* at 209, 211.

[10] *Id.* at 255.

2
Case No.: 11-02589 PSG
ORDER

scans and two MRI scans, and none of the tests revealed abnormalities or injuries.[11] Curnow visited Dr. William Herzberg ("Herzberg") in April and in May, and Herzberg noted Curnow had "headaches triggered by neck pain."[12]

Curnow completed the neurocognitive therapy in September 2008,[13] but continued to complain of headaches and memory problems.[14] He also reported ongoing anxiety,[15] nightmares while sleeping,[16] and, at one point, suicidal thoughts that led him to admit himself to a hospital.[17] His wife[18] reported that Curnow suffered from mood swings and struggled with day-to-day tasks to care for himself.[19]

Curnow filed for Social Security disability insurance benefits on April 29, 2008.[20] To aid in determining his eligibility, he underwent examinations by Dr. Tom M. Dooley ("Dooley"), a licensed psychologist, and Dr. Kim Webster ("Webster"), a physician.[21] Dooley noted Curnow's anxiety and memory problems, but indicated Curnow had scored well on a mental health status exam.[22] Webster noted that Curnow had neck and low back pain, diabetes, anxiety, depression,

---

[11] *Id.* at 210, 233, 241, 249, 264.

[12] *Id.* at 241.

[13] *Id.* at 320-21.

[14] *Id.* at 360.

[15] *Id.* at 350.

[16] *Id.* at 360.

[17] *Id.* at 344.

[18] Curnow and his wife have since divorced. *Id.* at 43.

[19] *Id.* at 143, 212.

[20] *Id.* at 15.

[21] *Id.* at 265-69, 307-12.

[22] *Id.* at 268.

3

Case No.: 11-02589 PSG
ORDER

hypertension, insomnia, and restless leg syndrome, but concluded that he would not be restricted from standing, walking, or sitting and that he could lift and carry objects.[23]

Dr. John F. Robinson ("Robinson"), a state agency psychologist, reviewed Curnow's records, including Dooley's report, and concluded that Curnow had "mild cognitive problems" possibly arising from the concussion.[24] He found, however, that Curnow's "principal impairment is apparently anxiety," and that his "alleged cognitive issues would not preclude all work."[25] Dr. Robert Hoskins ("Hoskins"), a medical doctor, also reviewed Curnow's records. He concluded that Curnow had some limitations on his physical abilities, but noted that Curnow's problem was "primarily a psych issue."[26]

Curnow also visited Dr. Paula Chaffee ("Chaffee"), a psychologist, for an assessment in support of his disability claim.[27] Chaffee noted that Curnow "is expected to have significant difficulty maintaining adequate pace in a work environment" and "is significantly slower at problem-solving than others his age."[28] She suspected that Curnow "may have Dementia Due to Head Trauma" and noted that "[t]he fact that [Curnow's] CT scans after his motor vehicle accident were within normal limits does not rule out a mild traumatic brain injury."[29] She opined that "[p]rognosis for [Curnow] is felt to be poor," but that Curnow did "not require assistance for supplemental funds management."[30]

---

[23] *Id.* at 312.

[24] *Id.* at 287.

[25] *Id.* at 287.

[26] *Id.* at 320.

[27] *Id.* at 383.

[28] *Id.* at 394.

[29] *Id.* at 393.

[30] *Id.* at 394.

4
Case No.: 11-02589 PSG
ORDER

**C.     ALJ's Findings**

On December 17, 2008, Curnow's application for disability benefits was denied after reconsideration.[31] He had a hearing before the ALJ on January 25, 2010.[32] The ALJ determined that Curnow's accident had not rendered him disabled, as defined by the Social Security Act.[33] For the first two steps of the disability analysis, she found Curnow had not engaged in substantial gainful activity since his injury and Curnow's post-concussion disorder qualified as a severe impairment under 20 C.F.R. § 404.1520(c).[34] At the third step, the ALJ found Curnow's impairment or combination of impairments did not meet the criteria for a listed impairment.[35] For the fourth step, she found that Curnow had sufficient residual functional capacity ("RFC") "to perform light work,"[36] and so, for the fifth step, based on Curnow's age, education, work experience and RFC, she found that "there are jobs that exist in significant numbers in the national economy that [Curnow] can perform."[37] The Appeals Council declined to review the ALJ's decision, and the Commissioner adopted the decision on March 24, 2011.

The ALJ gave several grounds for her determination.   She noted that no objective medical evidence supported Curnow's claims regarding the intensity, persistence, or functionally limiting effects of his pain and other symptoms.[38] She found Curnow not to be credible regarding his

---

[31] *Id.* at 15.

[32] *Id.* at 15.

[33] *Id.* at 15.

[34] *Id.* at 17.

[35] *Id.* at 18.

[36] *Id.* at 18-19.

[37] *Id.* at 21.

[38] *Id.* at 19.

subjective statements of the degree of his pain and other symptoms.[39] She pointed to Curnow's ability to perform household chores and noted that "many of the symptoms existed prior to the accident" and that Curnow "was able to work despite his issues of anxiety and headaches."[40]

Although she accorded Dykstra's physical assessments of Curnow the highest weight because he served as Curnow's primary care physician, the ALJ did not credit Dykstra's assessment of Curnow's cognitive abilities because he is not a psychiatrist, psychologist, or therapist.[41] She also discounted Chaffee's assessment because Chaffee had been retained by Curnow in advance of contesting the denial of disability benefits and her diagnosis conflicted with Herzberg's assessment.[42] Having discounted Chaffee's and Dykstra's reports and Curnow's testimony about his symptoms, she concluded that the remaining evidence supported a finding that Curnow retained sufficient RFC for light work.[43]

Curnow requests that the court reverse the ALJ's final decision and remand the case to the Social Security Administration for an award of benefits. Alternatively, Curnow requests that this case be remanded for further administrative proceedings to determine whether he is disabled. The Commissioner in turn asks that the ALJ's final decision be affirmed.

## II. LEGAL STANDARDS

### A.  Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Curnow benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon

---

[39] *Id.* at 19.

[40] *Id.* at 19.

[41] *Id.* at 20.

[42] *Id.* at 20.

[43] *Id.* at 21.

6

Case No.: 11-02589 PSG
ORDER

the application of improper legal standards.[44] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[45] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[46] Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[47]

### B. Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[48] If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[49] If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[50] If the claimant's impairment or

---

[44] *See Moncada v. Chater,* 6- F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[45] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[46] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

[47] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[48] *See id.*

[49] *See id.*

[50] *See id.*

7
Case No.: 11-02589 PSG
ORDER

combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[51] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[52] The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[53] If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[54] the determination of this issue comprises the fifth and final step in the sequential analysis.

## III. DISCUSSION

The court must first address the Commissioner's motion to strike Curnow's "Supplemental Reply." Curnow submitted to the court notice about a "fully favorable" decision on Curnow's subsequent application for disability benefits. According to the sur-reply, a different ALJ issued the decision one week after Curnow filed his reply brief with the court, and the new ALJ set his disability onset date as February 2, 2010 – one day after the first ALJ's decision. Curnow did not provide the court with the "fully favorable" decision nor did he provide any declarations or exhibits

---

[51] A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[52] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[53] *See id.*

[54] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

with the sur-reply.[55]  The Commissioner, however, does not dispute that a subsequent favorable decision was entered.[56]

Curnow did not request leave from the court to submit this additional information.  Local Rule 3.7(d) states that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior court approval" unless the party is either (1) objecting to new evidence in the reply brief or (2) bringing to the court's attention a relevant recently published judicial opinion.  Because the notice submitted arguably satisfies the second criterion, the Commissioner's motion to strike the sur-reply is DENIED.

The question becomes, however, to what use the court should put Curnow's notice of a favorable decision.  Curnow suggests that the propinquity of the disability onset date found by the new ALJ to the date of the first ALJ's decision "is a specific additional reason to remand this case to Defendant for further proceedings."[57]  At that point "any additional evidence, including the subsequent favorable decision itself (as evidence) would be considered and the final decision revised."[58]  The court construes Curnow's suggestion as a motion to remand under 42 U.S.C. § 405(g), sentence six, which permits remand upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence in to the record in a prior proceeding."[59]

In support of his suggestion, Curnow cites *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010).  In *Luna*, the claimant and the Commissioner agreed that a subsequent favorable decision by a

---

[55] *See* Docket No. 15.

[56] *See* Docket No. 16.

[57] Docket No. 15.

[58] *Id.*

[59] *Cf. Reichard v. Barnhart*, 285 F. Supp. 2d 728, 729-30 (S.D.W.Va. 2003) (construing claimant's letters with subsequent favorable decision attached as motion for remand under 42 U.S.C. § 405(g), sentence six).

9
Case No.: 11-02589 PSG
ORDER

different ALJ conflicted with the earlier decision being reviewed by the district court.[60] In light of the contradiction, the Commissioner moved to remand the first, unfavorable decision pursuant to 42 U.S.C. § 405(g), sentence six.[61] Finding the new decision to be new and material evidence, the district court granted the remand.[62]

The Ninth Circuit affirmed the district court's decision.[63] Finding that the record did not indicate "whether the decisions concerning [the claimant] were reconcilable or inconsistent," the court held that there was a "'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered" by the first ALJ and that "further consideration of the factual issues [was] appropriate to determine whether the outcome of the first application should [have been] different."[64]

The facts of *Luna* align with Curnow's case. As in *Luna*, Curnow's subsequent favorable decision set the disability onset date only one day after the first unfavorable decision, and, as in *Luna*, the court has an inadequate record before it to determine whether the two decisions are reconcilable. In light of the fact that the Commissioner has not denied or disputed Curnow's claim of a subsequent favorable decision, the court has no choice but to remand the case to the agency for further consideration of the two decisions.

### IV. CONCLUSION

The Commissioner's motion to strike Curnow's sur-reply is DENIED. In light of the potentially inconsistent decisions regarding Curnow's disability status, Curnow's motion for

---

[60] 623 F.3d at 1034.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

10
Case No.: 11-02589 PSG
ORDER

summary judgment is DENIED, the Commissioner's cross-motion for summary judgment is DENIED, and the case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: Ugrvgodgt"48."4234

*Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 11-02589 PSG
ORDER