United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9   UNITED STATES DISTRICT COURT

10   NORTHERN DISTRICT OF CALIFORNIA

11   SAN JOSE DIVISION

| | | |
|---|---|---|
| MICHAEL JOSEPH CURNOW, | ) | Case No.: 11-cv-02589-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING THE** |
| v. | ) | **COMMISSIONER'S MOTION FOR** |
| | ) | **RECONSIDERATION AND** |
| | ) | **REQUIRING STATUS UPDATES** |
| MICHAEL J. ASTRUE, COMMISSIONER OF | ) | **FOLLOWING REMAND** |
| SOCIAL SECURITY, | ) | |
| | ) | **(Re: Docket No. 17)** |
| Defendant. | ) | |
| | ) | |

Before the court is a motion brought by the Commissioner of Social Security

("Commissioner") requesting the court to amend the judgment in its September 26, 2012 order

remanding the action filed by Plaintiff Michael Joseph Curnow ("Curnow") for further

proceedings.[1] Curnow opposes the motion. The matter was submitted without oral argument

pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsel,

the court DENIES the motion for reconsideration. The case will be remanded and the court will

retain jurisdiction pending completion of the necessary administrative proceedings.[2]

---

[1] *See* Docket No. 17.

[2] *See Parquet v. Astrue*, C-96-01855 DLJ, 2011 WL 5030012, at *1 (N.D. Cal. Oct. 11, 2011).

1

Case No.: 11-02589 PSG
ORDER

# I. BACKGROUND

**A.**     **Factual Background**

In its previous order, the court provided the factual background for Curnow's disability

claim.[3]  The court adopts that same background here:

> The following facts are taken from the February 1, 2010 decision by the ALJ and
> the accompanying administrative record ("AR").  Curnow was born on October 2, 1961[4]
> and obtained his GED around 1980.[5]  He worked as a property inspector from 1992 to
> 2002, as a truck driver for a freight company from 2002 to 2006, and as a pilot car escort
> from 2006 to 2008.[6]  He has suffered from fibromyalgia from at least 2003 and has
> struggled with anxiety and depression for several years.[7]

>     **A.**     **Medical Evidence**

> On February 2, 2008, Curnow was involved in a motor vehicle accident[8] and met
> with his primary physician, Dr. Jon Dykstra ("Dykstra"), two days later.[9]  Curnow told
> Dykstra that his car had hit ice on the road, the car had rolled, and he had hit the side
> window with enough force to knock it out of its track.[10]  Dykstra diagnosed Curnow with
> post-concussion syndrome, and after repeated complaints from Curnow that he suffered

---

[3] *See id.*

[4] AR at 118.

[5] *Id.* at 140.

[6] *Id.* at 136.

[7] *Id.* at 17.

[8] *Id.* at 261.

[9] *Id.* at 214.

[10] *Id.* at 214.

Case No.: 11-02589 PSG
ORDER

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

headaches and personality shifts,[11] Dykstra referred him in May 2008 to neurocognitive therapy.[12]  Curnow also underwent at least two CT scans and two MRI scans, and none of the tests revealed abnormalities or injuries.[13]  Curnow visited Dr. William Herzberg ("Herzberg") in April and in May, and Herzberg noted Curnow had "headaches triggered by neck pain."[14]

Curnow completed the neurocognitive therapy in September 2008,[15] but continued to complain of headaches and memory problems.[16] He also reported ongoing anxiety,[17] nightmares while sleeping,[18] and, at one point, suicidal thoughts that led him to admit himself to a hospital.[19] His wife[20] reported that Curnow suffered from mood swings and struggled with day-to-day tasks to care for himself.[21]

Curnow filed for Social Security disability insurance benefits on April 29, 2008.[22] To aid in determining his eligibility, he underwent examinations by Dr. Tom M. Dooley

---

[11] *Id.* at 209, 211.

[12] *Id.* at 255.

[13] *Id.* at 210, 233, 241, 249, 264.

[14] *Id.* at 241.

[15] *Id.* at 320-21.

[16] *Id.* at 360.

[17] *Id.* at 350.

[18] *Id.* at 360.

[19] *Id.* at 344.

[20] Curnow and his wife have since divorced.  *Id.* at 43.

[21] *Id.* at 143, 212.

[22] *Id.* at 15.

Case No.: 11-02589 PSG
ORDER

("Dooley"), a licensed psychologist, and Dr. Kim Webster ("Webster"), a physician.[23]
Dooley noted Curnow's anxiety and memory problems, but indicated Curnow had scored
well on a mental health status exam.[24]   Webster noted that Curnow had neck and low back
pain, diabetes, anxiety, depression, hypertension, insomnia, and restless leg syndrome, but
concluded that he would not be restricted from standing, walking, or sitting and that he
could lift and carry objects.[25]

Dr. John F. Robinson ("Robinson"), a state agency psychologist, reviewed
Curnow's records, including Dooley's report, and concluded that Curnow had "mild
cognitive problems" possibly arising from the concussion.[26] He found, however, that
Curnow's "principal impairment is apparently anxiety," and that his "alleged cognitive
issues would not preclude all work."[27] Dr. Robert Hoskins ("Hoskins"), a medical doctor,
also reviewed Curnow's records.  He concluded that Curnow had some limitations on his
physical abilities, but noted that Curnow's problem was "primarily a psych issue."[28]

Curnow also visited Dr. Paula Chaffee ("Chaffee"), a psychologist, for an
assessment in support of his disability claim.[29]  Chaffee noted that Curnow "is expected to
have significant difficulty maintaining adequate pace in a work environment" and "is
significantly slower at problem-solving than others his age."[30]  She suspected that Curnow

---

[23] *Id.* at 265-69, 307-12.

[24] *Id.* at 268.

[25] *Id.* at 312.

[26] *Id.* at 287.

[27] *Id.* at 287.

[28] *Id.* at 320.

[29] *Id.* at 383.

[30] *Id.* at 394.

4

Case No.: 11-02589 PSG
ORDER

"may have Dementia Due to Head Trauma" and noted that "[t]he fact that [Curnow's] CT scans after his motor vehicle accident were within normal limits does not rule out a mild traumatic brain injury."[31]  She opined that "[p]rognosis for [Curnow] is felt to be poor," but that Curnow did "not require assistance for supplemental funds management."[32]

### C.     ALJ's Findings

On December 17, 2008, Curnow's application for disability benefits was denied after reconsideration.[33]  He had a hearing before the ALJ on January 25, 2010.[34]  The ALJ determined that Curnow's accident had not rendered him disabled, as defined by the Social Security Act.[35]  For the first two steps of the disability analysis, she found Curnow had not engaged in substantial gainful activity since his injury and Curnow's post-concussion disorder qualified as a severe impairment under 20 C.F.R. § 404.1520(c).[36]  At the third step, the ALJ found Curnow's impairment or combination of impairments did not meet the criteria for a listed impairment.[37]  For the fourth step, she found that Curnow had sufficient residual functional capacity ("RFC") "to perform light work,"[38] and so, for the fifth step, based on Curnow's age, education, work experience and RFC, she found that "there are jobs that exist in significant numbers in the national economy that [Curnow] can

---

[31] *Id.* at 393.

[32] *Id.* at 394.

[33] *Id.* at 15.

[34] *Id.* at 15.

[35] *Id.* at 15.

[36] *Id.* at 17.

[37] *Id.* at 18.

[38] *Id.* at 18-19.

Case No.: 11-02589 PSG
ORDER

United States District Court
For the Northern District of California

perform."[39]  The Appeals Council declined to review the ALJ's decision, and the Commissioner adopted the decision on March 24, 2011.

The ALJ gave several grounds for her determination.   She noted that no objective medical evidence supported Curnow's claims regarding the intensity, persistence, or functionally limiting effects of his pain and other symptoms.[40]  She found Curnow not to be credible regarding his subjective statements of the degree of his pain and other symptoms.[41]  She pointed to Curnow's ability to perform household chores and noted that "many of the symptoms existed prior to the accident" and that Curnow "was able to work despite his issues of anxiety and headaches."[42]

Although she accorded Dykstra's physical assessments of Curnow the highest weight because he served as Curnow's primary care physician, the ALJ did not credit Dykstra's assessment of Curnow's cognitive abilities because he is not a psychiatrist, psychologist, or therapist.[43]  She also discounted Chaffee's assessment because Chaffee had been retained by Curnow in advance of contesting the denial of disability benefits and her diagnosis conflicted with Herzberg's assessment.[44]  Having discounted Chaffee's and Dykstra's reports and Curnow's testimony about his symptoms, she concluded that the remaining evidence supported a finding that Curnow retained sufficient RFC for light work.[45]

---

[39] *Id.* at 21.

[40] *Id.* at 19.

[41] *Id.* at 19.

[42] *Id.* at 19.

[43] *Id.* at 20.

[44] *Id.* at 20.

[45] *Id.* at 21.

6

Case No.: 11-02589 PSG
ORDER

**B.      Procedural History**

In his motion for summary judgment, Curnow requested that the court reverse the ALJ's final decision and remand the case to the Social Security Administration for an award of benefits. He alternatively requested that this case be remanded for further administrative proceedings to determine whether he is disabled. The Commissioner in turn asked that the ALJ's final decision be affirmed.

Following the filing of all briefing on the dispute, Curnow submitted to the court notice about a "fully favorable" decision on Curnow's subsequent application for disability benefits. According to the sur-reply, a different ALJ issued the decision one week after Curnow filed his reply brief with the court, and the new ALJ set his disability onset date as February 2, 2010 – one day after the first ALJ's decision.  Curnow did not, however, provide the court with the "fully favorable" decision nor did he provide any declarations or exhibits with the sur-reply.[46]  The Commissioner moved to strike the supplemental brief,[47] which the court denied on the grounds that Curnow arguably had provided notice of a relevant recently published judicial opinion.[48]

Having determined that it would consider Curnow's sur-reply, the court was faced with notice of a new, favorable decision but with no formal request about what Curnow wanted the court to do, other than use that decision as "a specific additional reason to remand this case to [the Commissioner] for further proceedings."[49]  Despite Curnow not formally moving to remand the case in light of the new decision, the court nevertheless interpreted his notice as a motion to remand under 42 U.S.C. § 405(g), sentence six.  Sentence six permits remand upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate

---

[46] *See* Docket No. 15.

[47] *See* Docket No. 16.

[48] *See* Docket No. 17 (citing Civil L.R. 3-7(d)).

[49] *See* Docket No. 15.

7

Case No.: 11-02589 PSG
ORDER

**United States District Court**
For the Northern District of California

such evidence in to the record in a prior proceeding."[50]  The court found that Curnow's notice of

the subsequent favorable decision was sufficient to meet the standard for remand under sentence

six.  As Curnow relayed to the court, the second ALJ found an onset of disability only one day

after the first ALJ's finding of no disability and the court did not have the decision before it to

determine whether the subsequent finding was reconcilable – and therefore not material – or

whether the two decisions were irreconcilable.  Finding that the facts in this case aligned with the

facts in *Luna v. Astrue*,[51] the court remanded the case back to the Social Security Administration for

further consideration of the first decision in light of the second favorable determination.

The Commissioner now requests that the court amend the judgment in the September 26

order and rule on the parties' underlying summary judgment motions.

## II. LEGAL STANDARDS

"There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is

necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving

party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to

prevent manifest injustice; or 4) there is an intervening change in controlling law."[52]  Fed. R. Civ.

P. 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and

conservation of judicial resources."[53]

## III. DISCUSSION

The Commissioner asserts that the court committed "clear error" by remanding the case

even though Curnow failed to produce evidence of the actual second decision.  The Commissioner

---

[50] *See id.*

[51] 623 F.3d 1032 (9th Cir. 2010).

[52] *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal citations and quotations omitted).

[53] *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

8

Case No.: 11-02589 PSG
ORDER

now provides the second decision and argues that it is not new or material evidence requiring a remand for consideration of the first decision. Curnow opposes and asserts that the second decision is irreconcilable with the first decision and so the remand should be sustained.

The Commissioner argues that the first and second decisions are reconcilable because in the second decision the ALJ considered medical evidence from the period after the date of the first decision and evidence that Curnow had turned 50 years old in the interim. Because of these differences, the Commissioner argues that the second decision is not new, material evidence that could change the outcome of the first decision. According to the Commissioner, remand thus is inappropriate, and the court should reach the merits of the parties' summary judgment motions.

In *Luna v. Astrue*, the Ninth Circuit held that a second, favorable ALJ decision that is irreconcilable with the first, unfavorable decision is new, material evidence that requires remand to the Social Security Administration ("SSA") for "further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome on the claim."[54] But earlier, in *Bruton v. Massanari*, the Ninth Circuit advised that where a second favorable decision considers "different medical evidence, a different time period, and a different age classification" the subsequent decision is reconcilable and thus not material evidence to the prior decision, rendering remand unnecessary.[55]

The question presently before the court is whether *Luna* or *Bruton* applies to the two decisions at issue here. On the one hand, as in *Luna*, the second ALJ found the onset date of Curnow's disability to be one day after the first ALJ's decision.[56] But in *Bruton*, the second ALJ

---

[54] *See Luna*, 623 F.3d at 1034.

[55] *See* 268 F.3d 824, 827 (9th Cir. 2001).

[56] *See* Docket No. 19 Ex. 1.

Case No.: 11-02589 PSG
ORDER

United States District Court
For the Northern District of California

likewise found onset of disability to be one day after the first ALJ's decision.[57]   The court thus

does not find that the proximity in the determinations requires, on its own, that *Luna* rather than

*Bruton* govern.

The court next considers whether the second ALJ considered different medical evidence

that is reconcilable with the first ALJ's determination.   The second ALJ considered two pieces of

evidence that pre-date the first ALJ's decision: (1) medical records from the July 11, 2009

emergency room treatment of Curnow for "suicide ideation"[58]; and (2) an RFC questionnaire filled

out by Dykstra relating that Curnow's cognitive problems.[59]   Other than these two pieces of

evidence, the second ALJ relied on 19 reports from various doctors that post-date the first

decision.[60]   According to the second decision, from March 5, 2010 to October 2011, Curnow

regularly visited psychiatrists with ongoing complaints regarding his depression, anxiety, and

suicide ideation.[61]   The court also notes that as with the first ALJ, the second ALJ discounted

Dykstra's determinations about Curnow's ability to work given his purported cognitive

impairments but gave significant weight to Dykstra's determinations regarding Curnow's physical

limitations.[62]

Although the second ALJ relied on several reports post-dating the first ALJ's decision, the

second ALJ nevertheless set the onset disability date as February 2, 2010 – one day after the first

ALJ's decision and pre-dating any of the new evidence – and appears to have relied on at least

some overlapping evidence to support that onset date.   The court is unclear how to reconcile the

---

[57] *See Bruton*, 268 F.2d at 827.

[58] *See* Docket No. 19 Ex. 1; *see also* AR 344.

[59] *See* Docket No. 19 Ex. 1; *see also* AR 378-81.

[60] *See* Docket No. 19 Ex. 1.

[61] *See id.*

[62] *See id*; AR 20.

10

Case No.: 11-02589 PSG
ORDER

first ALJ's finding that the July 2009 hospital visit and Dykstra's report did not support a disability finding up through February 1, 2010 with the second ALJ's finding that the same evidence supported a finding of disability on February 2, 2010.  Given this inconsistency, *Luna* is the more appropriate case from which the court should take guidance.[63]

Finally, the Commissioner points to the second ALJ's determination that Curnow turned 50 years old before the date of his decision, and his assessment of Curnow's age as a "changed circumstance" warranting an award of subsequent benefits.  Curnow disputes the relevance of this determination, because on the date of onset, he was 48 years old and so, according to Curnow, consideration of his disability from February 2, 2010 until his fiftieth birthday must have been under the "younger individual age" regulations.[64]

"[C]hronological age in combination with [a claimant's] residual functional capacity, education, and work experience" are used to determine disability.[65]  At fifty years of age, a person is considered "closely approaching advanced age" and so age becomes a factor in determining disability.[66]  For claimants under fifty years old, age is not considered a factor that will affect their

---

[63] *See* 623 F.3d at 1035 ("We cannot conclude based on the record before us whether the decisions concerning Luna were reconcilable or inconsistent. There was only one day between the denial of Luna's first application and the disability onset date specified in the award for her successful second application, but she may have presented different medical evidence to support the two applications, or there might be some other reason to explain the change. Given this uncertainty, remand for further factual proceedings was an appropriate remedy."); *see also Bagley v. Astrue*, Case No. C-11-2149 EMC, 2012 WL 3537029, at *5 (N.D. Cal. Aug. 14, 2012) (noting that where medical evidence overlapped "in both substance and time" between two decisions, "[s]uch overlap weighs in favor of remand").

[64] *See* 20 C.F.R. § 416.963.

[65] *Id.* § 416.963(a).

[66] *See id.* § 416.963(d).

Case No.: 11-02589 PSG
ORDER

"ability to adjust to other work."[67]   The SSA is supposed to "use each of the age categories that applies to [claimants] during the period for which [it] must determine if [claimants] are disabled."[68]

The second ALJ noted that Curnow had turned fifty years old between the first decision and the second decision, which he considered a "changed circumstance" in determining Curnow's disability benefits.  He did not address Curnow's age directly in the step four RFC finding or in the step five determination regarding the availability of jobs.[69]  He also expressly found that Curnow was "a younger individual age 18-49 on the established disability onset date."[70]

Curnow argues that the second ALJ must have determined that he was disabled even without the increase in age given that the onset date the ALJ found was before Curnow turned fifty years old.  The Commissioner disagrees, noting that the second ALJ expressly stated that the increase in age was a "changed circumstance" warranting in part rebuttal of the presumption of non-disability that arises after a prior finding that a claimant is not disabled.[71]  The court is unclear from the second decision whether the second ALJ considered Curnow's increased age as if Curnow was fifty at the onset date or whether the ALJ considered Curnow's younger age when determining the disability onset date, as required by the regulations.  If the former, the second ALJ improperly assessed Curnow's disability at the onset date, and if the latter, the second ALJ's determination appears irreconcilable with the first ALJ who found no disability when Curnow was in the same age bracket.

---

[67] *See id.* § 416.963(c).

[68] 20 C.F.R. § 404.1563(b).

[69] *See* Docket No. 19 Ex. 1.

[70] *See id.*

[71] *See id.*

12

Case No.: 11-02589 PSG
ORDER

This uncertainty about the two decisions further counsels remand.  The court cannot say from the two decisions before it that the second decision is reconcilable with the first decision.  The medical evidence overlaps as does Curnow's age classification.  This irreconcilability renders the second decision new and material evidence requiring remand under sentence six.  The Commissioner's motion for reconsideration is DENIED.

The court does amend its earlier order in this respect.  A remand under sentence six does not divest the court of its jurisdiction; the Commissioner instead "must return to the district court to 'file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.'"[72] The Commissioner shall file with the court the papers required under 42 U.S.C. § 405(g) upon completion of the proceedings at the SSA.  In the interim, the parties shall file joint reports every 120 days to appraise the court of the status of the case.  The parties shall file the first report 120 days from the date of this order.

**IT IS SO ORDERED.**

Dated:  May 10, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[72] *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (quoting 42 U.S.C. § 405(g)).

13

Case No.: 11-02589 PSG
ORDER